**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **c/o United States Attorney's Office** | ) | **Civil Action No.** |
| **555 Fourth St., N.W.** | ) | |
| **Washington, D.C.    20530** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **$1,116,847.40 IN U.S. CURRENCY SEIZED ON** | ) | |
| **OR ABOUT SEPTEMBER 9, 2014, FROM** | ) | |
| **GOLDSILVER, INC.** | ) | |
| **Defendant.** | ) | |
| | ) | |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

*COMES NOW*, plaintiff, the United States of America, by and through its attorney, the

United States Attorney for the District of Columbia, to bring this verified complaint in a civil

action *in rem* to condemn and forfeit the above-listed defendant ("defendant property"), to the

use and benefit of the United States of America in accordance with Supplemental Rule G(2) of

the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the

"Supplemental Rules").   In support of its cause, plaintiff states as follows:

## NATURE OF THE ACTION AND DEFENDANT *IN REM*

1.      This is a civil action *in rem* for the forfeiture of the defendant property to the use

and benefit of the plaintiff, the United States.   Pursuant to 18 U.S.C. § 981(a)(1)(C), property is

subject to civil forfeiture if it is, any property, constituting or derived from proceeds traceable to,

*inter alia*, bank fraud, in violation of 18 U.S.C. § 1344, or false statements on loan applications,

in violation of 18 U.S.C. § 1014.   These offenses are "specified unlawful activit[ies]" as defined

by 18 U.S.C. § 1956(c)(7) and 18 U.S.C. § 1961(1).  Pursuant to 18 U.S.C. § 981(a)(1)(A),

property is subject to forfeiture if it is, any property, real or personal, involved in a transaction or

attempted transaction in violation of, *inter alia*, engaging in monetary transactions in property

derived from a specified unlawful activity, in violation of 18 U.S.C. § 1957.

## The Defendant *In Rem*

2.      The defendant property is one million, one hundred sixteen thousand, eight

hundred forty-seven dollars and forty cents ($1,116,847.40) in U.S. currency, which federal law

enforcement agents seized on or about September 9, 2014, upon the execution of a seizure

warrant at GoldSilver, Inc. on or about September 3, 2014.   The defendant property is more fully

described as follows:

> **$1,116,847.40 in U.S. Currency seized by the government on or about
> September 9, 2014, from GoldSilver, Inc., 429 Santa Monica Blvd.,
> Suite 325, Santa Monica, California 90401, upon the liquidation of
> any and all precious metal coins and bars purchased by Garth
> Gardner, D.O.B. xx/xx/69, beginning on or about May 5, 2008 until
> the present, except for $55,970 worth of precious metals.**

The defendant property is in the custody of the United States Secret Service and was placed in

the United States Department of Treasury's Treasury Suspense Fund.   For purposes of record

keeping, the defendant property is identified as Seizure No. 115-2014-021.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction of this civil action by virtue of 28 U.S.C.

§ 1345, because it has been commenced by the United States, and by virtue of 28 U.S.C.

§ 1355(a), because it is an action for the recovery and enforcement of a forfeiture under an Act of

Congress.   Venue is proper in this District because this is a forfeiture action or proceeding by

virtue of 28 U.S.C. § 1355(b)(1)(A), because this is a forfeiture action or proceeding brought in "the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred" and by virtue of 28 U.S.C. § 1395(b)(1), because "a civil proceeding for the forfeiture of property may be prosecuted in the district in which the property is found."   In this matter, there were acts giving rise to the forfeiture that occurred in this District and defendant property is now, and during the pendency of this action, has been in the jurisdiction of this Court.

4.      This civil action *in rem* for forfeiture is governed by 21 U.S.C. § 881, 18 U.S.C. § 983, the Federal Rules of Civil Procedure, and the Supplemental Rules, particularly Rule G.

## PROBABLE CAUSE

### Background

5.      Garth Gardner, also known as G.A. Gardner (hereinafter "Gardner"), was the owner of residential properties in the District of Columbia and elsewhere.  Gardner was the principal owner of GGC, Inc. and GGC Publishing, both of which purportedly published books by Gardner and others.

6.      Bank of America, N.A., Wachovia Bank, N.A. (now known as Wells Fargo Bank, N.A.), Washington Mutual Bank, F.A. (now known as JP Morgan Chase Bank, N.A.), E*Trade Bank, Provident Bank of Maryland (now known as M&T Bank and Manufacturers and Traders Trust Company), SunTrust Bank, Wells Fargo Bank, N.A., Citibank, F.S.B., Riggs Bank, N.A. (now known as PNC Bank, N.A.), PNC Bank, N.A., ING Bank, F.S.B. (now known as Capital One Bank, N.A.), Fleet National Bank (now known as Bank of America, N.A.), Chevy Chase Bank, F.S.B. (now known as Capital One Bank, N.A.), Countrywide Bank, N.A. (now known as Bank of America, N.A.), National City Bank (now known as PNC Bank, N.A.), JP Morgan

Chase Bank, N.A., Charles Schwab Bank, N.A., Flagstar Bank, F.S.B., and IndyMac Bank, F.S.B. (now known as OneWest Bank, F.S.B.) were financial institutions with deposits insured by the Federal Deposit Insurance Corporation.   First Horizon Home Loan Corporation was a wholly-owned subsidiary of First Tennessee Bank, N.A., a financial institution with deposits insured by the Federal Deposit Insurance Corporation.   Cendant Mortgage (now known as PHH Mortgage) was a mortgage company.

7.      These entities, collectively referred to as the "Lenders," were in the business, among other things, of loaning money to individuals who used their houses to secure the loans. These loans were:

      a.   to purchase a home where the Lender would loan a lump sum to pay the seller;

      b.   to refinance a loan where the Lender would provide funds to pay off the original loan and could pay out additional funds; or

      c.   to obtain a line of credit (known as a "home equity line of credit" or "HELOC") where an individual could pay off an original loan and/or take periodic cash advances up to a specified maximum amount of money (with additional funds available to be drawn against the line of credit if the individual paid back some of the borrowed money).

8.      Goldline International, Inc., GoldSilver, Inc. (also known as GoldSilver.com), and California Numismatic Investments (also known as GoldDealer.com) were precious metal retailers that bought and sold precious metals, including gold and silver, and other collectible items.

9.      Lenders required an individual who wished to obtain a loan and HELOC to complete a loan application, which would list the individual's assets and liabilities, including real

estate property owned and loans associated with each property.  Lenders relied upon the individual to be truthful in these loan applications.  Lenders would not loan money in excess of the available equity in the property securing the loan, because if the individual failed to repay the loan, the Lenders would foreclose on the loan, take possession of the property, and resell the property in an attempt to recover as much of the outstanding loan amount as possible.

10.    Loans were processed and settled by title and escrow companies.   It was the job of the title and escrow company to research the public land records filed on the property for liens to determine, among other things, whether the property was pledged as collateral for any other loan.   The title and escrow company would also be responsible for holding the Lender's money in escrow, paying out the money according to the Lender's directions, and acting as the fiduciary of the Lender.

11.    If a loan was approved, the Lender would instruct the title and escrow company to prepare for a "settlement," that is, a meeting where the individual would sign a final version of the loan application, as well as the Deed of Trust (providing public notice of the debt and granting authority to sell the property if the individual failed to pay the loan), Settlement Statement (an accounting of the disbursement of loan money), and other documents.   The Lender would provide the title and escrow company with instructions on how to secure the Lender's interest in the property and to pay off debts, if any, owed by the individual.

12.    If an individual used his/her home as collateral to secure a loan, then as a condition to loaning money, the Lender would typically require that all previous loans on the property be paid off and closed by the title and escrow company and that the notice of the paid debt be removed from the appropriate land records (such as the Recorder of Deeds in the District

of Columbia) so that there would be no other liens that could take precedence over the Lender's

lien.   The Lender also would require that a Deed of Trust be signed and filed in the land records

for the Lender's lien, so that no other liens could take precedence over the Lender's lien.

13.     After settlement, the title company would submit the Deed and Deed of Trust or

other security instruments for filing with the District of Columbia's Recorder of Deeds (if the

property were in the District of Columbia), with instructions that the Recorder of Deeds officially

record the documents in the public records and then return to the title company the stamped

recorded documents as proof that the documents were filed as required by the Lender.

**The Collateral**

14.     On or about October 31, 2003, in the District of Columbia, Gardner purchased a

residence in the 5000 block of 13th Street, N.W., Washington, D.C. (the "13th Street Property").

15.     On or about May 13, 2005, in the District of Columbia, Gardner purchased a

residence in the 1300 block of Dexter Terrace, S.E., Washington, D.C. (the "Dexter Terrace

Property"), through his company, GGC, Inc.   On or about September 26, 2005, GGC, Inc.

transferred the Dexter Terrace Property to Gardner.

**The Scheme to Defraud Lenders**

16.     From in or about August 2004, until in or about December 2009, in the District of

Columbia and elsewhere, Gardner, also known as G.A. Gardner, devised and intended to devise a

scheme to defraud financial institutions, that is, the Lenders, and to obtain money owned by and

under the custody and control of said Lenders by means of false and fraudulent pretenses,

representations, and promises.

6

**Purpose of the Scheme to Defraud**

17.     It was the purpose of the scheme to defraud that Gardner would use the 13th Street Property and Dexter Terrace Property to fraudulently obtain money from Lenders for his own personal use and benefit.

**Manner and Means**

It was part of the scheme to defraud that:

18.     On or about October 31, 2003, Gardner purchased the 13th Street Property for $335,500, which purchase Gardner financed through two mortgage loans obtained from WMC Mortgage Corporation, a $268,400 primary mortgage loan and a $67,100 second trust mortgage loan.

19.     On or about May 28, 2004, Gardner sent a facsimile to Chase Manhattan Mortgage Corporation with a copy of his purported Social Security Administration card bearing social security number xxx-xx-1354, which was not Gardner's social security number, as well as a copy of his District of Columbia driver's license, and a letter stating his interest in applying for a loan to refinance the mortgage on the 13th Street Property.

20.     On or about June 18, 2004, Gardner refinanced both mortgages on the 13th Street Property through a $363,700 mortgage loan obtained from Chase Manhattan Mortgage Corporation.

21.     Between on or about August 1, 2004, and on or about September 30, 2004, Gardner applied for twelve HELOC loans using the 13th Street Property as collateral (hereinafter, the "2004 HELOC loans").   Gardner settled on the 2004 HELOC loans between on

or about August 25, 2004, and on or about October 26, 2004.  The following chart summarizes

the 2004 HELOC loans:

| LENDER | LOAN AMOUNT | SETTLEMENT DATE (ON OR ABOUT) |
|---|---|---|
| Bank of America | $131,600 | 8/25/2004 |
| Wachovia Bank | $95,100 | 9/3/2004 |
| Washington Mutual Bank | $80,400 | 9/13/2004 |
| E-Trade Bank | $100,000 | 9/16/2004 |
| Provident Bank | $104,000 | 9/18/2004 |
| SunTrust Bank | $90,000 | 9/23/2004 |
| Wells Fargo Bank | $170,000 | 9/23/2004 |
| Citibank | $173,000 | 9/27/2004 |
| Riggs Bank | $173,000 | 9/28/2004 |
| Cendant Mortgage | $150,000 | 10/6/2004 |
| ING Bank | $57,700 | 10/14/2004 |
| Fleet Bank | $100,000 | 10/26/2004 |
| **TOTAL** | $1,424,800 | |

22.     In applying for and settling the 2004 HELOC loans, Gardner concealed and failed

to disclose to the Lenders that he had concurrently applied for and settled the other HELOC

loans, each of which also would be secured by a second deed of trust on the 13th Street Property.

As a result of the scheme, and as intended by Gardner, all of the 2004 HELOC loans were

approved and funded.

23.     On or about May 13, 2005, Gardner used his company, GGC, Inc., to purchase the

Dexter Terrace Property for $157,500 in cash.   At the time of settlement, Gardner presented two

cashier's checks to pay for the property purchase and the settlement costs, including a $149,000

cashier's check from Riggs Bank, N.A. (now known as PNC Bank, N.A.) and an $11,679.61

cashier's check from Bank of America.   The $149,000 cashier's check from Riggs Bank, N.A.

(now known as PNC Bank, N.A.) coincided with a $149,008 draw that Gardner took from the 2004 HELOC loan through Riggs Bank, N.A. (now known as PNC Bank, N.A.) on May 13, 2005. On or about September 26, 2005, Gardner transferred ownership of the Dexter Terrace Property from GGC, Inc. to himself.

24      Between on or about March 1, 2006, and on or about April 30, 2006, Gardner applied for thirteen HELOC loans using the Dexter Terrace Property as collateral (hereinafter, the "2006 HELOC loans"). Gardner settled on twelve of the 2006 HELOC loans between on or about May 10, 2006, and on or about June 7, 2006. Gardner's application for a HELOC loan through IndyMac Bank, F.S.B. (now known as OneWest Bank, F.S.B.) was declined. The following chart summarizes the 2006 HELOC loans:

| LENDER | LOAN AMOUNT | SETTLEMENT DATE (ON OR ABOUT) |
|---|---|---|
| PNC Bank | $195,000 | 5/10/2006 |
| Wachovia Bank | $148,500 | 5/12/2006 |
| Chevy Chase Bank | $150,000 | 5/12/2006 |
| Citibank | $136,000 | 5/12/2006 |
| Countrywide Bank | $180,000 | 5/12/2006 |
| First Horizon Home Loan Corporation/First Tennessee Bank | $125,000 | 5/12/2006 |
| National City Bank | $168,240 | 5/12/2006 |
| Washington Mutual Bank | $192,000 | 5/15/2006 |
| SunTrust Bank | $160,000 | 5/15/2006 |
| JP Morgan Chase Bank | $150,000 | 5/15/2006 |
| Charles Schwab Bank | $100,000 | 5/15/2006 |
| Flagstar Bank | $166,400 | 6/7/2006 |
| IndyMac Bank | $200,000 | Loan Declined |
| **TOTAL** | $2,071,140 | |

25.     In applying for and settling the 2006 HELOC loans, Gardner concealed and failed to disclose to the Lenders that he had concurrently applied for and settled the other HELOC loans, each of which also would be secured by a second deed of trust on the Dexter Terrace Property.   As a result of the scheme, and as intended by Gardner, all of the 2006 HELOC loans, with the exception of the IndyMac Bank loan, were approved and funded.

26.     On or about March 27, 2007, Gardner settled on a loan modification relating to the 2006 HELOC loan he previously obtained through Citibank, increasing the line of credit from $136,000 to $189,200.

27.     Gardner submitted the applications for the 2004 HELOC loans and the 2006 HELOC loans within the same relative and respective time periods, in order to cause the settlement dates to occur within close proximity to one another, and by extension, to minimize the opportunity for the Lenders to learn through a title inquiry about the other loans for which Gardner had applied.

28.     Gardner made materially false statements and misrepresentations in, and provided materially false documentation with, his loan applications and in settling on the 2004 HELOC loans and the 2006 HELOC loans.   Among the materially false statements, misrepresentations, and false documentation,

        a.      Gardner provided a false social security number and falsely represented himself as a United States citizen.

        b.      Gardner falsely represented his assets and liabilities at the times that he applied for and settled the 2004 HELOC loans and the 2006 HELOC loans.

10

      c.     With respect to the 2006 HELOC loans, Gardner falsely represented that he would be occupying the Dexter Terrace Property as his primary residence.

29.     Gardner made materially false statements and misrepresentations in loan documents that Gardner executed at settlement, including affidavits and other documents certifying to the accuracy and completeness of the information provided in applying for the loans, and that no other liens had been placed on either the 13th Street Property or the Dexter Terrace Property, respectively.   Gardner also executed affidavits at settlement for certain of the 2006 HELOC loans certifying that Gardner would occupy the Dexter Terrace Property as his primary residence, when in truth and in fact, he did not.

30.     On or about April 8 and 9, 2006, Gardner faxed a false utility bill purporting to show the electricity usage at the Dexter Terrace Property to SunTrust Bank and Citibank, respectively, when Gardner knew that in truth and in fact, the utility bills actually reflected the electricity usage for the 13th Street Property.

31.     On or about May 10, 2006, Gardner submitted a credit application to Cort Furniture Rental relating to several items of furniture that Gardner rented and arranged for delivery to the Dexter Terrace Property on or about May 15, 2006.   Gardner rented the furniture for a four-day period, until on or about May 19, 2006, so that, among other reasons, the rented furniture would be present in the Dexter Terrace Property at the time of an interior appraisal on or about May 16, 2006, to give the false appearance that Gardner used the Dexter Terrace Property as his primary residence, when in truth and in fact, he did not.

32.     Between on or about September 23, 2004, and on or about June 9, 2008, Gardner made advances and draws on the 2004 HELOC loans and the 2006 HELOC loans.

33.     Between on or about November 2, 2004, and on or about March 2, 2005, Gardner used proceeds of the 2004 HELOC loans to purchase properties in Baltimore, Maryland (the "Baltimore Properties") outright and with no additional financing.

34.     Gardner used his ownership of the Baltimore Properties to conceal the extent of his liabilities on the 13th Street Property, as a result of advances and draws he had made on the 2004 HELOC loans.  In applications for certain of the 2006 HELOC loans, Gardner falsely attributed certain outstanding loan obligations on the 13th Street Property to certain of the Baltimore Properties.  In some instances, Gardner falsely attributed outstanding liabilities to Baltimore Properties that Gardner previously sold and no longer owned.

35.     Between on or about December 17, 2007, and on or about December 4, 2009, Gardner used funds derived from the 2004 HELOC loans and the 2006 HELOC loans to purchase precious metals and other items through Goldline International, Inc., GoldSilver, Inc. (also known as GoldSilver.com), and California Numismatic Investments (also known as GoldDealer.com).  These purchases included gold bullion, gold coins, silver bars, silver coins, and collectible treasury notes, among other items.

36.     Gardner failed to repay the principal amounts outstanding on the 2004 HELOC loans secured by the 13th Street Property totaling $1,400,708.

37.     Gardner failed to repay the mortgage loan obtained through Chase Manhattan Mortgage Corporation, which maintained the first lien position on the 13th Street Property, with the amount of unpaid principal totaling $342,951.

38.     Gardner failed to repay the principal amounts outstanding on the 2006 HELOC loans secured by the Dexter Terrace Property totaling $1,920,586.

12

39.     On or about the dates listed below, in the District of Columbia and elsewhere, for the purpose of executing the aforementioned scheme and artifice and attempting to do so, Gardner did knowingly commit, and willfully caused the commission of, the following acts, each of which constituted an execution of the fraudulent scheme:

| On or About Date | Act |
|---|---|
| 9/18/04 | Gardner signed a deed of trust and borrower affidavit on the 13th Street Property to Provident Bank of Maryland, a federally insured financial institution now known as M&T Bank and Manufacturers and Traders Trust Company, to secure a HELOC loan in the amount of $104,000. |
| 9/23/04 | Gardner signed a deed of trust on the 13th Street Property to SunTrust Bank, a federally insured financial institution, to secure a HELOC loan in the amount of $90,000. |
| 9/28/04 | Gardner signed a deed of trust on the 13th Street Property to Riggs Bank, N.A., a federally insured financial institution now known as PNC Bank, N.A., to secure a HELOC loan in the amount of $173,000. |
| 10/14/04 | Gardner signed a borrower lien affidavit on the 13th Street Property to ING Bank, F.S.B., a federally insured financial institution now known as Capital One Bank, N.A., to secure a HELOC loan in the amount of $57,700. |
| 5/12/06 | Gardner signed a deed of trust on the Dexter Terrace Property to Countrywide Bank, N.A., a federally insured financial institution now known as Bank of America, N.A., to secure a HELOC loan in the amount of $180,000. |
| 5/12/06 | Gardner signed a deed of trust and borrower's limited title agreement on the Dexter Terrace Property to First Horizon Home Loan Corporation, a wholly owned subsidiary of First Tennessee Bank, N.A., a federally insured financial institution, to obtain proceeds from First Tennessee Bank, N.A. and secure |

| | a HELOC loan in the amount of $125,000. |
|---|---|
| 5/12/06 | Gardner signed a deed of trust on the Dexter Terrace Property to National City Bank, a federally insured financial institution now known as PNC Bank, N.A., to secure a HELOC loan in the amount of $168,240. |
| 5/15/06 | Gardner signed a deed of trust and property affidavit and agreement on the Dexter Terrace Property to Washington Mutual Bank, F.A., a federally insured financial institution now known as JP Morgan Chase Bank, N.A., to secure a HELOC loan in the amount of $192,000. |
| 5/15/06 | Gardner signed a deed of trust and grantor limited title agreement on the Dexter Terrace Property to SunTrust Bank, a federally insured financial institution, to secure a HELOC loan in the amount of $160,000. |
| 5/15/06 | Gardner signed a deed of trust and owner's affidavit on the Dexter Terrace Property to Charles Schwab Bank, N.A., a federally insured financial institution, to secure a HELOC loan in the amount of $100,000. |
| 6/7/06 | Gardner signed a deed of trust, borrower's affidavit as to other liens, and affidavit of occupancy on the Dexter Terrace Property to Flagstar Bank, F.S.B., a federally insured financial institution, to secure a HELOC loan in the amount of $166,400. |

**False Statements**

40.     On or about the dates listed below, in the District of Columbia and elsewhere, Gardner unlawfully and knowingly made material false statements and provided material false documentation to the financial institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation, and each false statement is listed below, in connection with loan applications for the purpose of obtaining the 2004 HELOC loans on the 13th Street Property and the 2006 HELOC loans on the Dexter Terrace Property, in that Gardner provided false

14

applications, and fictitious support therefor, for the purpose of influencing the actions of the
financial institutions listed below:

| On or About Date | Financial Institution | Act |
|---|---|---|
| 9/28/04 | Riggs Bank, N.A. (now known as PNC Bank, N.A.) | Gardner signed a loan application for a HELOC loan to be secured by the 13th Street Property containing false statements. |
| 5/12/06 | First Horizon Home Loan Corporation (a wholly owned subsidiary of First Tennessee Bank, N.A.) | Gardner signed a loan application for a HELOC loan to be secured by the Dexter Terrace Property containing false statements. |
| 5/12/06 | National City Bank (now known as PNC Bank, N.A.) | Gardner signed a loan application for a HELOC loan to be secured by the Dexter Terrace Property containing false statements. |
| 5/15/06 | Charles Schwab Bank, N.A. | Gardner signed a loan application for a HELOC loan to be secured by the Dexter Terrace Property containing false statements. |
| 6/7/06 | Flagstar Bank, F.S.B. | Gardner signed a loan application for a HELOC loan to be secured by the Dexter Terrace Property containing false statements. |

### Engaging in Monetary Transactions

41.     On or about May 5, 2008, through on or about December 4, 2009, in the District
of Columbia and elsewhere, Gardner did knowingly engage in and attempt to engage or cause
others to engage in monetary transactions by, through, or to a financial institution, affecting
interstate commerce, in criminally derived property of a value greater than $10,000, that is on or
about the dates listed below, funds were transferred from accounts held by Gardner at Fidelity

Investments ("Fidelity") into an account held by Gardner at GoldSilver, Inc. (also known as

GoldSilver.com), which funds were then used for the purchase of silver bars and other precious

metals, such property having been derived from a specified unlawful activity, that is, bank fraud,

in violation of 18 U.S.C.§ 1344, and false statements on loan applications, in violation of 18

U.S.C. § 1014.

| Transaction Type | Date | Amount |
|---|---|---|
| Funds Wired | 5/6/2008 | $200,000 |
| Funds Wired | 5/12/2008 | $100,000 |
| Funds Wired | 5/15/2008 | $200,000 |
| Purchase Order for Silver | 5/5/2008 | ($498,160) |
| Funds Wired | 8/8/2008 | $90,000 |
| Purchase Order for Silver | 8/8/2008 | ($88,944) |
| Funds Wired | 8/27/2008 | $34,000 |
| Purchase Order for Silver | 8/18/2008 | ($24,375) |
| Purchase Order for Silver | 9/11/2008 | ($6,986) |
| Purchase Order for Silver | 9/23/2008 | ($42,409) |
| Purchase Order for Silver | 9/29/2008 | ($26,504) |
| Funds Wired | 9/30/2008 | $70,000 |
| Purchase Order for Silver | 10/8/2008 | ($47,891) |
| Purchase Order for Silver | 10/10/2008 | ($101,509) |
| Purchase Order for Silver | 10/16/2008 | ($73,215) |

| Funds Wired | 10/16/2008 | $150,000 |
|---|---|---|
| Funds Wired | 10/22/2008 | $40,000 |
| Funds Wired | 10/29/2008 | $64,000 |
| Funds Wired | 11/20/2008 | $10,000 |
| Funds Wired | 11/10/2008 | $6,000 |
| Purchase Order for Silver | 12/4/2009 | ($29,925) |

## Seizure Warrant

42.     On or about September 3, 2014, the United States Secret Service served a seizure warrant authorized by Magistrate Judge John M. Facciola of the United States District Court for the District of Columbia, upon GoldSilver, Inc.   *See* Case No. 14-mj-00511.   The seizure warrant required law enforcement to seize "any and all precious metal coins and bars purchased by Garth Gardner, D.O.B. xx/xx/69, beginning on or about May 5, 2008, until the present from GoldSilver, Inc. . . .   except for $55,970 worth of precious metals," and required the liquidation of any precious metals "in a reasonable and prudent manner designed to maximize the value of property reflected in the account."   The defendant $1,116,847.40, reflects the liquidated value of the seized precious metals held on behalf of Gardner by GoldSilver, Inc. or its agent, as of on or about September 9, 2014.

## COUNT I

43.     All statements and averments made in paragraphs 1-42 are re-alleged and incorporated, herein, by reference.

44.     As described above, the defendant property constitutes or is derived from

17

proceeds traceable to bank fraud, in violation of 18 U.S.C. § 1344.

45.     By reason of the above-described facts, the defendant property is subject to

forfeiture to the United States pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C).

## COUNT II

46.     All statements and averments made in paragraphs 1-42 are re-alleged and

incorporated, herein, by reference.

47.     As described above, the defendant property constitutes or is derived from

proceeds traceable to false statements on a loan application, in violation of 18 U.S.C. § 1014.

48.     By reason of the above-described facts, the defendant property is subject to

forfeiture to the United States pursuant to the provisions of Title 18, U.S.C. § 981(a)(1)(C).

## COUNT III

49.     All statements and averments made in paragraphs 1-42 are re-alleged and

incorporated, herein, by reference.

50.     As described above, the defendant property is property, real or personal, involved

in a transaction or attempted transaction in violation of sections 1956 or 1957 of Title 18, or any

property traceable to such property.

51.     By reason of the above-described facts, the defendant property was involved in

monetary transactions over $10,000, in criminally derived property, in violation of 18 U.S.C.

§ 1957, and is, therefore, subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the plaintiff prays that, as to the above-referenced defendant property,

due process issue according to law; that, pursuant to law, notice be provided to all interested

parties to appear and show cause why the forfeiture should not be decreed and defendant

properties be condemned as forfeited to the United States of America; and for such other and

further relief as this Court may deem just, necessary and proper.

Respectfully submitted,


VINCENT H. COHEN, JR.
ACTING UNITED STATES ATTORNEY


_____
ARVIND K. LAL
Assistant United States Attorney
District of Columbia Bar No. 389496
Chief, Asset Forfeiture and Money Laundering Section


_____
DIANE G. LUCAS,
Assistant United States Attorney
District of Columbia Bar No. 443610
Asset Forfeiture and Money Laundering Section
555 4th St., N.W., Room 4822
Washington, D.C. 20530
(202) 252-7724
Diane.Lucas@usdoj.gov

## <u>VERIFICATION</u>

I, Special Agent Lawrence Flagg, a Special Agent with the Internal Revenue Service,

Criminal Investigations, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the

foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known

to me or furnished to me by law enforcement agents and that everything contained in this

Complaint is true and correct.

Executed on this _____ day of July 2015.


                                                  _____
                                                  Special Agent Lawrence Flagg
                                                  Internal Revenue Service
                                                  Criminal Investigations